**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**THE AMERICAN AUTOMOBILE
ASSOCIATION, INC.,**

          **Plaintiff,**

**-vs-**                                                   **Case No. 6:11-cv-668-Orl-18DAB**

**IN CHARGE MARKETING, INC.,
TRAVCOM LLC, PETER NAGY, JR.,
DAYANNA ACOSTA NAGY, PETER a/k/a
Pedro SOTOLONGO, RIGOBERTO
SOTOLONGO, and DANIEL MARSHALL,**

          **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION FOR ENTRY OF DEFAULT JUDGMENT (Doc. No. 38)**
>
> **FILED:** October 21, 2011
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

Plaintiff, The American Automobile Association, Inc. ("AAA") filed this action for trademark infringement, unfair competition, and false advertising in violation of Sections 32 and 43(a) of the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. §§ 1114, 1125(a), and Fla. Stat. §§ 495.131 *et seq.*; for trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

and Fla. Stat. §§ 495.151 *et seq.*; for claims arising under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*; and for unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, arising out of alleged unauthorized use of AAA's distinctive AAA trademarks (the "AAA Marks") in connection with an unsolicited facsimile advertising scheme (Doc. No. 1). The allegations in the Complaint and the demand for relief are directed to all of the Defendants collectively, with the Prayer for Relief seeking joint injunctive relief as well as compensatory damages in "an amount yet to be determined," statutory damages, interest, costs, and attorney's fees (Doc. No. 1 at p. 22). The Clerk has entered defaults against all the Defendants (Doc. Nos. 19, 24, 37), and Plaintiff now seeks an order: (1) entering a judgment by default against Defendants; (2) granting a permanent injunction prohibiting Defendants from further infringement of Plaintiff's Marks; (3) granting AAA statutory damages in the amount of $2,001,000; and (4) granting AAA's request to submit a separate motion seeking an award of fees and costs pursuant to Federal Rule of Civil Procedure 54(d)(1) & (2).[1]

The motion is supported by memorandum and Declarations of James G. Brehm (Plaintiff's corporate counsel) (Doc. No. 38-1) and attorney Hope Hamilton (Doc. No. 38-2). Additionally, Plaintiff has tendered a proposed Order (Doc. No. 38-3). Despite the filing of a Notice of Appearance by counsel for Defendants Daniel Marshall, and Peter and Rigoberto Sotolongo (Doc. No. 39), no defendant has filed any response to the motion and the time for doing so has passed. For the reasons set forth below, it is **respectfully recommended** that the motion be **granted.**

***Standards of Law***

---

[1] Although Plaintiff has pled violation of Fla. Stat. §§ 495.131 (Count V) and 495.151 (Count VI), it does not present any argument with respect to these counts, instead contending only that "Defendants' unauthorized use of the AAA Marks constitutes federal trademark infringement, federal false designation of origin and unfair competition, federal trademark dilution, federal false advertising, violations of the Telephone Consumer Protection Act, and unfair competition under Florida law." (Doc. No. 38 at p.6). The Court presumes that the state law counts for infringement and dilution have been abandoned.

The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-plead in the complaint, it is established by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir.1987). A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). The United States Supreme Court has noted the difference between well-pleaded facts and conclusory allegations. In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.... A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' ... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id*. at 1949 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the plaintiff is entitled to relief.'" *Id*. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). This analysis is equally applicable to a motion for default judgment. *See De Lotta v. Dezenzo's Italian Restaurant, Inc*., No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, 5 (M.D. Fla. 2009).

Once liability is established, the Court turns to the terms of the judgment. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. Fed.R.Civ.P. 55(b)(1)-(2). Pursuant to Rule 55(b)(2), the Court "may conduct hearings

or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to: A) conduct an accounting; B) determine the amount of damages; C) establish the truth of any allegation by evidence; or D) investigate any other matter."

*Analysis*

By virtue of the default, Defendants have admitted the well pled assertions in the Complaint regarding "Defendants' knowing and willful violation of AAA's rights in its famous and distinctive AAA trademarks." Complaint at ¶1. Plaintiff has alleged that "Defendants have used and continue to use the AAA marks in commerce without authorization and with full knowledge that they are not authorized to use those Marks." Complaint at ¶1. According to the Complaint and the uncontradicted statements in the Declarations, in March 2011, AAA discovered that Defendants were sending unsolicited facsimile transmissions ("junk faxes") which prominently display the AAA Marks and falsely purport to be sponsored by or affiliated with AAA. *See* Hamilton Decl. at ¶ 3. Since March 2011, AAA has received notices from AAA Member Clubs nationwide that have seen Defendants' unsolicited faxes and expressed concern regarding unauthorized use of the AAA Marks. *See* Brehm Decl. at ¶ 7. In addition, two AAA Member Club employees received one of Defendants' junk faxes on a AAA corporate fax machine. Brehm Decl. at ¶ 6.

As detailed in the papers, these junk faxes, examples of which are attached to the Complaint, are part of an elaborate scheme. Complaint at ¶3. Specifically, the junk faxes use the AAA Marks to advertise "Corporate Special" travel deals to locations such as Mexico and the Dominican Republic, at "implausible" prices. Complaint at ¶¶ 45-55. Some faxes provide the supposed "Reservation Code: AAA777," and they encourage consumers to dial a toll-free number to make a reservation. Callers who seek to confirm affiliation with AAA or who otherwise request information regarding the source of the travel packages are disconnected. *Id.*

On April 4, AAA sent Defendants a cease and desist notice regarding this unauthorized use of the AAA Marks. Hamilton Decl. at ¶ 4; Complaint at ¶56. AAA informed Defendants that the junk faxes violate the Lanham Act and the Telephone Consumer Protection Act, as well as state statutes and common law, and demanded that Defendants cease all use of the AAA Marks. *Id.* Despite notice that the use of the Marks is not authorized, Defendants continue to use the Marks and benefit from that use. Complaint at ¶58.

Plaintiff asserts that the Marks are famous and distinctive and are registered with the United States Patent and Trademark Office. Complaint at ¶¶24-32. Plaintiff has also alleged that the unauthorized use gives the public the false impression that Defendants and the products and services they offer are sponsored, approved or endorsed by AAA, Complaint at ¶59, and that the unlawful conduct is and continues to be willful, deliberate, and in bad faith. Complaint at ¶62. Plaintiff alleges that it has been and will continue to be injured by this conduct.

As these allegations are admitted by the default, are otherwise not contested, and are amply supported by the record, the Court accepts them as true. The Court also finds that these allegations establish that Defendants' unauthorized use of the AAA Marks constitutes federal trademark infringement, federal false designation of origin and unfair competition, federal trademark dilution, federal false advertising, violations of the Telephone Consumer Protection Act, and unfair competition under Florida law.

"To establish a prima facie case of trademark infringement under § 43(a) [of the Lanham Act, 15 U.S.C. § 1125(a)], a plaintiff must show '(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'" *Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010), *citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*,

106 F.3d 355, 358 (11th Cir.1997). Here, AAA has shown that: (1) it has trademark rights in the AAA Marks and (2) there is a likelihood of confusion between the AAA Marks and Defendants' mark. The Complaint alleges Plaintiff's longstanding rights in the well-established and well recognized AAA Marks and shows not only a likelihood of confusion, but *actual* customer confusion. Moreover, the Court has ample basis to conclude that the wrongful use of the AAA Marks was intended to convey the impression that the junk faxes are sponsored by or approved by Plaintiff. *See Burger King v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) ("falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or sponsorship constitutes infringement"). Plaintiff has established that Defendants' use of the AAA Marks constitutes federal trademark infringement.

With respect to the count for unfair competition, "[t]he Court addresses Plaintiffs claim for unfair competition under the same analysis as used for the trademark infringement claim because 'the same facts support a cause of action for unfair competition as for trademark infringement; if there is no genuine issue of fact as to trademark infringement, there is none as to unfair competition, either.'" *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F.Supp.2d 1248, 1257 n. 7 (M.D. Fla. 2009), *citing Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n. 3 (11th Cir.1991).

As AAA has established that Defendants' unlawful conduct constitutes trademark infringement and unfair competition under the Lanham Act, AAA has also established unfair competition in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq. See Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011) (legal standards applied to FDUTPA claim "are the same as those we have applied under section 43(a) of the Lanham Act . . .").

The Court also finds that the facts establish that Defendants unauthorized use of the AAA Marks constitutes false advertising under federal law. To establish that Defendants violated the relevant portion of 15 U.S.C. § 1125(a),[2] AAA must demonstrate that: "(1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been-or is likely to be-injured as a result of the false advertising." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (internal citation omitted). As is clear from the foregoing, all of these elements have been established here.[3] Plaintiff is entitled to judgment on this claim.

The unauthorized use also constitutes trademark dilution. To establish that Defendants violated 15 U.S.C. § 1125(c), AAA must demonstrate that: (1) it owns a famous mark; (2) Defendants' use began after AAA's Mark became famous; (3) Defendants' use dilutes or is likely to dilute the distinctive quality of the famous mark; and (4) Defendants' use is commercial and in commerce. *See* 15 U.S.C. § 1125(c)(1); *Ohio Sav. Bank v. Kempa*, No. 08-cv-0742, 2008 WL 276045, at 2 (M.D. Fla. 2008). All of these elements are present here. The misappropriation of the Marks and intentional association with what is represented as "inferior" travel products dilutes the value of the Marks.

---

[2] Section 43(a) of the Lanham Act provides, in relevant part, as follows:
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
...
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a).

[3] The advertisements are false in that they assert an affiliation with AAA; they are likely to deceive and have, in fact, actually deceived customers; the strength of the AAA brand would have a material effect on the purchasing decision; the faxes were sent to at least five states; and injury has occurred and is likely to continue as a result of the false advertising.

Finally, Defendants' conduct in sending two junk faxes to AAA-owned fax machines constitutes a violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* in that the faxes were not invited, solicited or otherwise permissible under that Act.

As for the remedies sought, Plaintiff asks for injunctive relief, statutory damages and an award of attorneys' fees and costs, to be calculated by separate motion.[4] Toward that end, Plaintiff has tendered a proposed Order (Doc. No. 38-3), which this Court recommends be entered.

Injunctive relief is appropriate here. Plaintiff has shown that Defendants have a pattern of misappropriating marks in order to advance their own commercial purposes, and there is reason to conclude that the wrongful conduct will continue unless enjoined. *See* Complaint at ¶¶ 33-42 (noting four other lawsuits brought by famous mark owners against Defendants for similar misconduct, including *Am. Airlines, Inc. v. In Charge Mktg., Inc.*, *et al.*, No. 2:10-cv-467-FtM-29SPC, pending in the Ft. Myers division of this Court, and *Delta Airlines, Inc., v. Peter Sotolongo, et al,* No. 6:10-cv-1344-22GJK, pending in this division, as well as two Federal Communication Commission proceedings, and an investigation by state authorities). Plaintiff's request for a permanent injunction against Defendants' continued use of the Marks, or marks confusingly similar to the AAA Marks, should be granted.[5]

---

[4]While the Court would prefer to have addressed the fees and costs in the instant motion, awarding them separately is in keeping with the local rule.

[5]The language of the Injunction tendered in the proposed Order (Doc. No. 38-3) differs from the language set forth in the Complaint. The Complaint sought the following:
I. Enjoin and restrain Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them from engaging in any of the following acts:
(a) Using without authorization of AAA any of the AAA Marks, logos, and trade names, including, but not limited to, the designation "AAA" or any other name, logo, or Mark that includes the designation "AAA" or that is confusingly or deceptively similar to any of the AAA Marks, logos, and trade names, either alone or in conjunction with other words or symbols, as a part of any trademark, service mark, logo, trade name, corporate name, assumed name, domain name, on or in relation to any goods sold or distributed by the Defendants, or in any other manner; and
(b) Using the letter "A" or any multiple combination of letters "A" in any form or manner that would tend to identify or associate Defendants or their business or services with AAA, including without limitation, in the marketing, promotion, advertising, identification, sale or distribution of goods or services, or in any other manner, including the transmission of
(continued...)

Plaintiff also seeks statutory damages of $2,000,000 for Defendants' willful violations of the Lanham Act. Pursuant to 15 U.S.C. § 1117(c):

c) Statutory damages for use of counterfeit marks

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

As noted above, no other conclusion can be reached but that Defendants misappropriated the AAA Marks intentionally and willfully. Moreover, the scope of the junk fax scheme, reaching at least five states, shows an intent to wrongfully trade on the goodwill embodied in the Marks to the maximum extent possible, with no regard for the impact on the registered holder of the Marks. As Defendants have defaulted, there is no evidence before the Court regarding the exact reach of the scheme, and no way to calculate the full extent of the harm done to Plaintiff. Considering all of these

---

[5](...continued)
facsimiles;(Doc. No. 1 at p. 21).
    The proposed Order, however, provides:
(2) Defendants and their officers, directors, agents, servants, employees, representatives, attorneys, successors-in-interest, parent companies, affiliated companies, subsidiary companies, aliases and any and all persons in active concert or participation with them, directly or indirectly, are PERMANENTLY ENJOINED from:
(a) Using any marks that are identical or confusingly similar to a registered mark of AAA and/or any AAA subsidiary; and
(b) Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities in paragraph 2(a) above.

factors, the Court finds imposition of statutory damages in the amount of $2 million to be appropriate.[6]

An additional $1,000 in statutory damages should be awarded under the Telephone Consumer Protection Act, for the two unsolicited junk faxes received by Plaintiff in violation of the Act. *See, generally, Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 878 (8th Cir. 2005) ("The Act provides for damages in the amount of actual monetary loss or $500 per violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B).").

For the reasons set forth above, it is **respectfully recommended** that the motion for entry of default judgment be **granted** and the proposed Order be entered**.**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 14, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[6]*See Am. Airlines, Inc. v. In Charge Mktg., Inc.*, No. 2:10-cv-467, Doc. No. 16 (Order of March 12, 2011 – awarding $4,000,000 in statutory damages for willful infringement by Peter and Rigoberto Sotolongo in a nearly identical fax scheme).